IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

STEVEN PINDER                                                                                           PLAINTIFF
ADC #123397

v.                                  2:20-cv-00201-BSM-JJV

WELLPATH, LLC, *et al*.                                                                          DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

I.    **INTRODUCTION**

Plaintiff Steven Pinder ("Plaintiff") is a prisoner in the East Arkansas Regional Unit of the Arkansas Division of Correction who has filed a *pro se* Complaint seeking relief pursuant to 42 U.S.C. § 1983. (Doc. 2.) Plaintiff's remaining claim is that in March 2020, Defendants Dr. Gary R. Kerstein and APRN Tracy Bennett violated his Eighth Amendment right to receive adequate medical care when they canceled an order directing that two sets of handcuffs be used whenever he was restrained, as properly grieved in EAM-20-01411.[1]  (*Id.;* Doc. 111.)

---

[1] All other claims and Defendants have been previously dismissed without prejudice. (Docs. 24, 54, 111.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to judgment as a matter of law. (Docs. 153-155.) Plaintiff has filed a Response, and Defendants have filed a Reply. (Docs. 157-160.) After careful consideration and for the following reasons, I recommend the Motion for Summary Judgment be granted, Plaintiff's claims against Defendants Kerstein and Bennett be dismissed with prejudice, and this case be closed.

## II.   SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

**III.     FACTS**

Unless otherwise stated, the undisputed facts taken from Plaintiff's medical records and deposition, are as follows.[2]  Sometime prior to his incarceration, Plaintiff had two surgeries to correct unspecified injuries to his right shoulder.  (Doc. 154-2 at 74.)  In January 2019, a former party APRN issued Plaintiff a double-cuff script, which is a medical restriction requiring two sets of handcuffs be used whenever Plaintiff was handcuffed behind his back.[3]  (Doc. 159 at 16.)

On March 17, 2020, APRN Bennett saw Plaintiff, who was fifty-nine years old, to review his various prescriptions and medications.  (Doc. 154-1 at 1.)  During the exam, APRN Bennett noted Plaintiff "moves all extremities" without difficulty and could "reach all the way around to get script copies out of his neck pouch."  (*Id*.)  She also recorded Plaintiff "reports he is in the max for having knives/blades."  (*Id*.)  She then declined to renew Plaintiff's double-cuff script because it was "unsafe for staff and guards." (*Id*.)

On May 20, 2020, Dr. Kerstein conducted a telehealth visit with Plaintiff.  (Doc. 154-1 at

---

[2]  In their Reply, Defendants argue their Statement of Facts should be deemed admitted, pursuant to Local Rule 56.1, because the paragraphs in Plaintiff's Statement of Facts: (1) do not directly correspond to their paragraphs, (2) do not cite supporting evidence, and (3) go beyond the factual assertions contained in their document.  (Docs. 154, 159, 160.)  But Local Rule 56.1(b) only requires the non-moving party to file a "short and concise statement of material facts as to which it contends a genuine issue exists to be tried."  It does not say the paragraph numbers must align, require evidence be cited, or prohibit the non-party from adding disputed facts.  And unlike the case cited by Defendants, I did not impose any such additional requirements in this case.  *See Gunter v. Banks*, 5:10-cv-139-JMM-JTR (E.D. Ark. Jan 14. 2011)  (Doc. 110).  Thus, the Defendants Statement of Facts will not be deemed admitted by Plaintiff.

[3]  In his Response to the Motion for Summary Judgment, Plaintiff says he had the double-cuff script for twenty years.  (Doc. 158 at 4.)  But he has not cited any evidence to support that contention.  *Frevert v. Ford Motor Co.,* 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor"); *Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022) (the trial court is "not required to wade through the entire record" to find evidence to support a party's factual assertions.)

2.) Plaintiff reported pain from an old shoulder injury and requested a double-cuff script. (*Id.*) Dr. Kerstein denied that request because there was nothing in the prison's electronic medical records about Plaintiff having a shoulder injury (*Id.*)

On June 15, 2020, filed grievance EAM-20-1411 alleging his right shoulder "popped out of place" because Defendants Kerstein and Bennett canceled his double-cuff script. (Doc. 67-4 at 170-172.) But Plaintiff, who testified during his deposition that he was able to pop his shoulder back into place without assistance, did not seek any medical treatment until July 1, 20, and 21, 2020. (Doc. 154-1 at 3; Doc. 154-2 at 74-75; Doc. 159 at 20-21.) Plaintiff was seen on July 22, 2020 by a non-party nurse, who recorded Plaintiff had an active range of motion to his "upper extremities bilaterally and without any difficulty." (Doc. 154-1 at 4.) On July 29, 2020 and August 4, 2020, Plaintiff did not attend appointments with Dr. Kerstein and APRN Bennett, respectively. (Doc. 154-1 at 5-8.) The parties dispute why Plaintiff did not do so.[4] (Docs. 154, 159, 160.) But it is undisputed Dr. Kerstein and APRN Bennett were told Plaintiff had refused care on both of those dates. (Doc. 154-1 at 5, 7.)

## IV.    DISCUSSION

### A.    Inadequate Medical Care Claims

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care." *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016). To defeat summary judgment and proceed to trial on his Eighth Amendment inadequate medical care claims, Plaintiff must have evidence: (1) he had an objectively serious medical need; and (2) Defendants Kerstein

---

[4] Defendants say Plaintiff refused to attend the appointments. But I note he did not sign the July 29, 2020 or August 4, 2020 refusal of care forms. (Docs. 154-1 at 6, 8.) Plaintiff says a captain would not take him to the August 4, 2020 appointment because he was getting dressed too slowly. (Doc. 159 at 23.) But he has not offered any explanation as to why he did not attend the July 29, 2020 appointment.

and Bennett subjectively knew of, but deliberately disregarded, those serious medical needs.  *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018).  As to the second element, it is well settled that deliberate indifference is a high threshold that goes well beyond negligence or gross negligence.  *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).  To establish deliberate indifference, there must be evidence prison officials "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk."  *Shipp,* 9 F.4th at 703 (emphasis in the original).  This level of mental culpability is "akin to criminal recklessness."  *Id*.  And a mere disagreement with the course of medical care does not rise to the level of a constitutional violation.  *Langford*, 614 F.3d at 460; *Barr*, 909 F.3d at 921-22.

Here, the undisputed medical evidence establishes that in March 2020, APRN Bennett observed Plaintiff had a normal range of motion in his shoulders which was consistent with what a non-party nurse later observed during her July 2020 exam after Plaintiff complained his shoulder had popped out of place more than once.  Based on her physical exam and Plaintiff's statement that he was currently in maximum security for possessing a knife, APRN Bennett determined, in her professional medical opinion, that it was not necessary for Plaintiff to have a double-cuff script.  And, in May 2020, Dr. Kerstein agreed with her conclusion because there was no documentation in the electronic medical records that Plaintiff had a prior shoulder injury.  Thereafter, on July 29, 2020 and August 4, 2020, APRN Bennett and Dr. Kerstein did not renew Plaintiff's double-cuff scripts after they were told Plaintiff refused to attend his appointments.  Nothing about this undisputed course of medical treatment suggests deliberate indifference to Plaintiff's medical needs.  *See Fourte v. Faulkner Cnty*., 746 F.3d 384, 390 (8th Cir. 2014) (no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

5

To the contrary, Dr. Chris Horan, who is the Regional Medical Director, says in his sworn affidavit that based on his review of the medical records it is his professional medical opinion that APRN Bennett and Dr. Kerstein provided appropriate medical care when they decided not to renew Plaintiff's double-cuff script. (Doc. 154-3.) "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment." *Cejvanovic v. Ludwick*, 923 F.3d 503, 507-08 (8th Cir. 2019); *Dulany*, 132 F.3d at 1240 (same). Plaintiff has not offered any evidence to contradict Dr. Horan's professional medical opinion.

Instead, Plaintiff says APRN Bennett and Dr. Kerstein were deliberately indifferent because they did not order x-rays of his shoulders or consult an orthopedic specialist before they canceled his double-cuff script. However "doctors remain free to exercise their independent medical judgment." *Barr,* 909 F.3d at 921–22. And a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Id; see also Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment" that "does not represent cruel and unusual punishment").

Similarly, Plaintiff claims APRN Bennett acted with deliberate indifference by relying on a 2017 disciplinary conviction (which he contests) for possessing a knife. And he says other medical providers have renewed his double-cuff script despite that conviction. But as previously mentioned, deliberate indifference is a subjective test based on what the defendant actually knew at the time of the contested action. Here, the March 17, 2020 medical records say Plaintiff told

6

APRN Bennett "he <u>is</u> in max for having knives/blades." (Doc. 154-1 at 1) (emphasis added.) There is no evidence APRN Bennett knew that placement was based on a 2017 disciplinary conviction. And a disagreement between medical professionals about the appropriate treatment, based on their subjective knowledge and personal observations, does not rise to the level of a constitutional violation. *See Long v. Nix,* 86 F.3d 761, 765-66 (8th Cir. 1996); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988).

Plaintiff also says APRN Bennett decided not to renew his double-cuff script in retaliation for him filing *Pinder v. Rechcigl*, 2:20-cv-00047-DPM-JJV, which was an inadequate medical care case he filed against Defendant Bennett and several other parties about his treatment for glaucoma. However, Plaintiff did not make a retaliation claim in grievance EAM-20-1411, which the Court has already ruled (Doc. 111) is the only grievance he properly exhausted against Defendants Bennett and Kerstein. *See Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Further, to avoid summary judgment a prisoner must present "affirmative evidence of a retaliatory motive" and "mere allegations" are insufficient. *De Rossitte v. Correct Care Solutions, LLC,* 22 F.4th 796 (8th Cir. 2002); *Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007). The undisputed timing here does not suggest retaliation. Plaintiff filed *Pinder v. Rechcigl* on March 6, 2020. *See Pinder,* 2:20-cv-00047-DPM-JJV (Doc. 2.) APRN Bennett denied his request to reissue the double-cuff script on March 17, 2020. But service of the complaint in *Pinder v. Rechcigl*, was not ordered until April 7, 2020, and executed on APRN Bennett until May 1, 2020. (*Id*. at Docs. 17, 41.) There is no evidence APRN knew she had been sued in *Pinder v. Rechcigl* until <u>after</u> she denied his request for a double-script. And Plaintiff has not otherwise pointed to any affirmative evidence suggesting Defendant Bennett acted out of retaliation instead

7

of exercising her professional medical judgment.

Finally, in a similar vein, Plaintiff says APRN Bennett renewed his double-cuff script in May 9, 2022 "because this Court had ordered his right shoulder claim was to proceed forward." (Doc. 159 at 11.)  But the only issue properly raised and grieved in this case is whether Defendant Bennett acted with deliberate difference when she decided not to renew his double-cuff script in 2020.  There is no evidence in the record regarding Plaintiff's 2022 medical condition, disciplinary history, and other factors that may have caused Defendant Bennett to change her mind about issuing the double-cuff script.

For these reasons, I conclude there is no evidence from which a reasonable juror could find APRN Bennett and Dr. Kerstein "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk" when they did not renew his double-cuff scripts.  *See Shipp,* 9 F.4th at 703.  Accordingly, they are entitled to summary judgment, and I recommend Plaintiff's claims against them be dismissed with prejudice.

**V.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED THAT:

1.    Defendants' Motion for Summary Judgment (Doc. 153) be GRANTED, Plaintiff's inadequate medical care claims against APRN Bennett and Dr. Kerstein be DISMISSED with prejudice, and this case be CLOSED.

2.    The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 10th day of August 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE