# United States Court of Appeals
### For The Eighth Circuit
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 09, 2024

Michael David Gooch
MICHAEL D. GOOCH
7215 N. 162nd Street
68007
Bennington, NE  68007

```
FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
Aug 09, 2024
Tammy H. Downs, Clerk
By: JohnHibbs D.C.
                    DEP CLERK
```

RE:  22-3050  Steven Pinder v. WellPath, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Maureen W. Gornik
Acting Clerk of Court

NDG

Enclosure(s)

cc:	Kynda Almefty
    Clerk, U.S. District Court, Eastern District of Arkansas
    Benjamin Davis Jackson
    Danielle C. Jefferis
    Jacob A. McElroy
    Rosalyn Lynette Middleton
    Honorable Brian S. Miller
    Steven L. Pinder
    Rex M. Terry
    Honorable Joe J. Volpe

   District Court/Agency Case Number(s):   2:20-cv-00201-BSM

# United States Court of Appeals
## For The Eighth Circuit

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 09, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE:  22-3050  Steven Pinder v. WellPath, et al

Dear Sir or Madam:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant and appeared on the brief was Michael David Gooch, of Bennington, NE.

     Counsel who presented argument on behalf of the appellee Diamond Drugs, Inc. and appeared on the brief was Jacob A. McElroy, of Rogers, AR. The following attorney also appeared on the appellee brief of Diamond Drugs, Inc.: Benjamin D. Jackson, of Little Rock, AR. Counsel who presented argument on behalf of the appellee Rory Griffin and appeared on the brief was Rosalyn Lynette Middleton, AAG, of Little Rock, AR.  Counsel who presented argument on behalf of appellees Gregory Rechcigl, WellPath, LLC, Gary Kerstein, and Tracy Bennett was Rex M. Terry, of Fort Smith, AR. The following attorney appeared on the brief of appellees Gregory Rechcigl, WellPath, LLC, Gary Kerstein, and TracyBennett; Michelle Banks Odum, of Little Rock, AR.

     The judge who heard the case in the district court was Honorable Brian S. Miller.

     If you have any questions concerning this case, please call this office.

                            Maureen W. Gornik
                            Acting Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

     District Court/Agency Case Number(s):   2:20-cv-00201-BSM

United States Court of Appeals
For the Eighth Circuit

_____

No. 22-3050
_____

Steven L. Pinder

*Plaintiff - Appellant*

v.

WellPath, LLC, also known as Correct Care Solutions LLC, et al.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta
_____

Submitted: January 11, 2024
Filed: August 9, 2024
_____

Before LOKEN, KELLY, and STRAS, Circuit Judges.
_____

LOKEN, Circuit Judge.

    Arkansas inmate Steven Pinder filed this 42 U.S.C. § 1983 action in October 2020 against correctional defendants. The *pro se* complaint sought declaratory and injunctive relief and substantial damages, alleging that Defendants' deliberate indifference to Pinder's serious medical needs stemming from several continuing medical issues violated his Eighth Amendment rights. He appeals the district court's final order granting summary judgment to two Defendants on Pinder's claim of

deliberative indifference to the orthopedic condition of his right shoulder, and the court's earlier interlocutory dismissal of his other claims for failure to establish IFP status. We granted his *pro se* motion for leave to proceed IFP on appeal and appointed appellate counsel. Defendants filed an opposed motion to revoke Pinder's appellate IFP status, tendering new medical evidence that he was not in imminent danger when the appeal was filed. We took the motion under advisement. For the reasons that follow, we remand the motion to revoke IFP status on appeal to the district court, and we also remand the issue whether the interlocutory dismissals were proper for further consideration in light of a recent Eighth Circuit opinion addressing that issue. We need not rule on the grant of summary judgment at this time.

**I. Background**

Pinder is an inmate in the long-term custody of the Arkansas Department of Corrections ("ADOC"). Proceeding *pro se*, he filed this lawsuit against numerous Defendants including Wellpath, LLC, the medical care contractor for ADOC; numerous Wellpath employees; Diamond Drugs, Inc., the provider of prescription drugs for ADOC inmates; and Rory Griffin, Deputy Director of ADOC. Pinder alleged that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment by failing to provide adequate care for numerous ailments and conditions -- severe glaucoma, peptic ulcers, acid reflux condition, diabetes, the orthopedic condition of his right shoulder, and the denial of timely prescribed and over-the-counter medications.

The district court threatened dismissal for failing to pay the court's filing fees. Pinder moved for leave to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915(a)(1) and (b)(1-3), which authorize a district court to allow an indigent prisoner to bring a civil action, or appeal a judgment in a civil action, without prepayment of filing fees, upon payment of an initial partial filing fee, with the remainder of the filing fee to be paid in monthly installments. The district court noted

that Pinder appeared to be an indigent prisoner ineligible for IFP status under the "three strikes" provision in § 1915(g), added to § 1915 in the Prison Litigation Reform Act ("PLRA"):

> (g) In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Admitting he has "three strikes" because prior actions were dismissed as frivolous or for failure to state a claim, Pinder filed a detailed Declaration of Imminent Danger asserting that the alleged denial and delay of treatments for the above-mentioned conditions placed him at risk of, *inter alia*, shoulder dislocation, further loss of vision up to potential blindness, and perforation of his stomach lining. He argued that he "is under imminent danger of serious physical injury" and therefore eligible for IFP status under 28 U.S.C. § 1915(g).

It is well-established that, for a three-strike plaintiff to be granted IFP status based on the imminent danger exception in § 1915(g), "the requisite imminent danger . . . must exist at the time the complaint or the appeal is filed, not when the alleged wrongdoing occurred." Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003). The magistrate judge assigned to Pinder's case, screening the case under § 1915A(a), initially recommended denying leave to proceed IFP because Pinder's allegations did not demonstrate imminent danger of serious physical injury when he filed the complaint. Responding to Pinder's objection, the magistrate judge recommended (I) granting leave to proceed IFP on claims related to Pinder's shoulder, ulcers, and glaucoma against some Defendants because Pinder satisfied the imminent danger exception for those claims, and (ii) dismissing his remaining claims for which he

failed to satisfy the imminent danger exception. The district court adopted the magistrate judge's recommendations, and the case proceeded on the shoulder, ulcers, and glaucoma claims against Defendants Wellpath; Wellpath employees Dr. Gary Kerstein, Arkansas Practice Nurse ("APN") Tracy Bennett, and Gregory Rechcigl; Diamond Drugs; and Deputy Director Griffin.

Some months later, the remaining Defendants moved for summary judgment arguing, *inter alia*, that IFP status should be revoked for the remaining claims because Pinder's deposition testimony made clear that he was not in imminent danger for those claims when he filed his complaint. After briefing, the magistrate judge recommended that IFP status be revoked for Pinder's ulcer-related and glaucoma-related claims and the claim that he was denied ibuprofen for the orthopedic problems with his shoulder. The magistrate judge recommended that IFP status be maintained for his claim that Dr. Kerstein and APN Bennett improperly refused to renew Pinder's "double-cuff script" -- which prescribes that, whenever restrained, Pinder be placed in two sets of handcuffs with his hands behind his back to prevent further shoulder injury.[1] Pinder objected. The district court again adopted the magistrate judge's recommendations. We dismissed Pinder's appeal from that order as premature.

Months later, Dr. Kerstein and APN Bennett moved for summary judgment on the remaining double-cuff script claim. Reviewing the parties' briefs and the evidence in the summary judgment record, the magistrate judge recommended that summary judgment be granted because there was no evidence permitting a reasonable jury to find that Bennett and Kerstein acted with deliberate indifference to Pinder's serious medical needs in declining to renew his double-cuff script in 2020. The district court adopted the magistrate judge's recommendation to grant summary judgment. Final judgment was entered on September 21, 2022.

---

[1] Pinder alleged that his shoulder had dislocated at least three times because Kerstein and Bennett declined to renew his double-cuff script.

-4-

Pinder filed a timely notice of appeal, a motion to proceed IFP on appeal, and a "Declaration of Imminent Danger." A panel of this Court granted Pinder leave to proceed IFP on appeal, appointed appellate counsel, and requested briefing on the issue "whether the district court committed reversible error by applying a claim-by-claim approach to appellant's request to proceed in forma pauperis under 28 U.S.C. 1915(g)." Before merits briefs were filed, Defendants moved to revoke Pinder's IFP status and dismiss the appeal because Pinder was not in imminent danger of serious physical injury when *the appeal* was filed. Pinder filed a response opposing revocation of IFP status; Defendants filed a reply. We directed that the motion be taken with the case for consideration by the hearing panel.

## II. Discussion

Before reaching issues the parties have briefed on the merits, we must first address Defendants' pending motion to revoke Pinder's IFP status, because loss of IFP status would put Pinder at risk of having the appeal dismissed for failure to pay appellate filing fees. See § 1915(b).[2]

---

[2]Defendants' motion asks us to immediately dismiss the appeal. But our "normal disposition" when a three strike plaintiff's complaint fails to allege imminent danger is to remand to give him the opportunity to reinstate his lawsuit by paying the filing fee due. Martin, 319 F.3d at 1051. There is good reason for this practice. To avoid infringing the fundamental right of indigent inmates to have "reasonably adequate opportunity to file nonfrivolous legal claims," Lewis v. Casey, 518 U.S. 343, 356 (1996), § 1915(b)(4) expressly provides that "[i]n no event shall a prisoner be prohibited from . . . appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."

-5-

## A. Whether Pinder's IFP Status Should Be Revoked.

After filing his appeal, Pinder filed a *pro se* "Declaration of Imminent Danger" alleging that he qualifies for IFP status on appeal under the imminent danger exception because Defendants' continuing failure to treat his peptic ulcer condition, orthopedic issues in his right shoulder, and diabetic nerve damage in his lower extremities put him at risk of perforation of his stomach lining, sleep deprivation and inability to eat due to acid reflux, and amputation of his lower extremities. He further alleged that Defendants still refuse to return him to his attending physician for glaucoma care and have continued to delay providing medications prescribed to treat his glaucoma, putting him at risk of further vision loss when he has already lost 70% and 60% of the field of vision in his right and left eyes respectively due to glaucoma and to Defendants' improper treatment.

After reviewing the Declaration, a panel of this Court granted leave to proceed IFP on appeal. This was predictable, given our decision in an earlier appeal that Pinder's allegations that he was at risk of blindness due to Defendants failure to timely provide prescribed glaucoma medication was sufficient to allow him to proceed IFP on appeal. Pinder v. McDowell, 619 F. App'x 565, 566 (8th Cir. 2015) (unpublished). The panel appointed appellate counsel, established a briefing schedule, and requested that the parties brief the claim-by-claim issue.

Seven weeks later, Defendants filed the pending motion to revoke IFP status and dismiss the appeal. In support, Defendants submitted an affidavit from Dr. Chris Horan, a Wellpath employee who oversees administration of medical services for ADOC, averring that he reviewed Pinder's medical records attached to the affidavit from June 25, 2022, to January 13, 2023, and concluded to a reasonable degree of medical certainty that Pinder was not in imminent danger of serious physical injury from the medical conditions described in his "Declaration of Imminent Danger" filed with his appeal. This evidence is not part of the record on appeal and was not

-6-

considered by the district court. Pinder, through appointed counsel, opposed revocation and dismissal, disputing the factual basis in Defendants' newly presented evidence and arguing that dismissal is an improper remedy "[e]ven if IFP revocation is considered a potentially appropriate remedy."

Granting an indigent prisoner leave to proceed IFP is a threshold issue. The three strikes exception in § 1915(g) "does not close the courthouse doors to prisoners who frequently file frivolous lawsuits; rather, it merely makes them pay the full ordinary filing fees sooner rather than later." Ashley v. Dilworth, 147 F.3d 715, 717 (8th Cir. 1998). Because this is a threshold issue decided at the pleading stage of a prisoner lawsuit, we have consistently held that a well-pleaded allegation of imminent danger "must be taken as true before [a prisoner's] complaint can be dismissed as insufficient on its face." McAlphin v. Toney, 281 F.3d 709, 710 (8th Cir. 2002). Like other pleadings, the allegation of imminent danger must be plausible, that is, the prisoner complaint must include "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury." Martin, 319 F.3d at 1050; accord Andrews v. Cervantes, 493 F.3d 1047, 1055-57 (9th Cir. 2007). Congress in § 1915(g) also required a showing of imminent danger when a three-strikes plaintiff appeals an adverse judgment. Therefore, even if the district court granted IFP status, Pinder must demonstrate imminent danger of serious physical injury when he filed the appeal. The same standard should apply in determining whether he initially made an adequate showing of imminent danger. See Williams v. Paramo, 775 F.3d 1182, 1189 (9th Cir. 2015).

The initial grant of IFP status is made based on the three-strikes plaintiff's *ex parte* showing of imminent danger, often before the defendants have even been served. An indigent prisoner has a strong incentive to obtain IFP status, and a three-strikes prisoner has previously demonstrated a willingness to file frivolous lawsuits against correctional officials -- the reason Congress added § 1915(g) to the IFP statute. Accordingly, at least six of our sister circuits "have held that *district courts* --

-7-

upon challenge by a defendant [after an initial grant of IFP status] -- may conduct a narrow evidentiary inquiry into the prisoner-litigant's fear of imminent danger . . . [and] may consider materials outside of the complaint in conducting this limited inquiry." Shepherd v. Annucci, 921 F.3d 89, 94-95(2d Cir. 2019) (emphasis added), citing Smith v. Wang, 452 F. App'x 292, 293 (4th Cir. 2011); Taylor v. Watkins, 623 F.3d 483, 485-86 (7th Cir. 2010); Fuller v. Myers, 123 F. App'x 365, 368 (10th Cir. 2005); Gibbs v. Roman, 116 F.3d 83, 86-87 (3d Cir. 1997), overruled on other grounds by Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001) (en banc); accord McLeod v. Sec'y, Fla. Dep't of Corr., 778 F. App'x 663, 665 (11th Cir. 2019). Reasons held to justify revocation have not been limited to fraud or willful failure to disclose the prisoner plaintiff's litigation history. "Allowing courts to conduct a limited probe into the plausibility of a prisoner-litigant's claim of imminent danger accords with the PLRA's aims." Shepherd, 921 F.3d at 95. Although we have not previously considered the issue, we agree with these decisions. The nature of the discretionary "narrow evidentiary inquiry" will necessarily vary from case to case.

This case involves a motion to revoke the grant of IFP status *on appeal* based on medical records that are not part of the record on appeal and have only been reviewed by a prison medical officer. To our knowledge, no circuit has considered this question. The issue was present in Paramo, 775 F.3d at 1187. In remanding the dismissal of the three-strikes plaintiff's § 1983 action on other grounds, the Ninth Circuit panel observed that determining whether the prisoner showed imminent danger at the time of the appeal should "ordinarily be conducted through analysis of the prisoner's facial allegations" because imminent danger "concerns only a threshold procedural question" -- when the filing fee must be paid -- and because a court of appeals is ill-equipped to adjudicate disputed factual matters in the first instance. Id. at 1189-90.

We agree these are legitimate concerns. But the purpose of the PLRA – to reduce the flood of frivolous indigent inmate litigation -- applies as much to the filing

-8-

of an appeal as to the filing of a complaint, and Congress has directed that the imminent danger inquiry be separately made when each is filed. Moreover, even though Defendants' motion to revoke raises potential evidentiary issues, we need not conduct, or appoint a special master to conduct, the requisite factual inquiry. Rather, we remand to the district court to initially consider this revocation issue. That court is already familiar with Pinder's prior imminent danger allegations and can develop whatever evidentiary record may be appropriate.[3]

---

[3]Judge Kelly dissents from our decision to remand this issue for two reasons. First, she argues the ad panel's initial decision to allow Pinder to appeal IFP should be considered law of the case because Appellees have not established that the ad panel's decision to grant Pinder's motion to proceed IFP on appeal was clearly erroneous. We disagree. This is a motion to revoke that decision, like a motion to reconsider an interlocutory order by a district court of a court of appeals. The cases cited in the dissent recognize that the law-of-the-case doctrine is not controlling "if substantially different evidence is subsequently introduced." *Our court* decided to have this motion decided "by the panel to which this case is submitted for disposition on the merits." Whether to refer the motion to the ad panel, a different panel, or the full court is an internal procedural question for the court to decide. Whatever panel received the referral would have to answer the same questions, subject to en banc review -- will our court consider a motion to revoke IFP status granted on appeal, and if so, how do we decide *this* motion on the merits. The initial ad panel order is not law of the case that governs or precludes those questions.

Second, Judge Kelly argues that, *as a matter of law*, the motion to revoke must be denied because it was untimely, a question not argued by Pinder and on which the dissent would afford Appellees no opportunity to respond. Again, we disagree. Whether a seven-week delay was inexcusable and prejudicial are fact-intensive questions that require input from the parties and are best addressed by the district court on remand. We are not precluding Pinder from raising the issue with the district court. The law-of-the-case doctrine does not govern the inquiry.

-9-

### B. Whether the Statute Authorizes Claim-by-Claim Determination of the Imminent Danger Exception.

Pinder argues the district court erred in determining the imminent danger exception in 28 U.S.C. § 1915(g) on a claim-by-claim basis and dismissing most but not all of his Eighth Amendment claims in interlocutory orders because he failed to show imminent danger with respect to those claims.[4]  Pinder argues that if he can establish that he satisfies the imminent danger exception with respect to any of his claims, then § 1915(g) requires that he be permitted to proceed IFP with his entire complaint, including claims for which there is no showing that he was in imminent danger when he filed his complaint.  The magistrate judge and the district court, without discussing the issue, adopted the claim-by-claim approach in interlocutory orders, dismissing without prejudice all claims but one because Pinder failed to satisfy the imminent danger exception with respect to the other claims.

---

[4]Defendants argue we have no jurisdiction to review these orders because Pinder noticed only the district court's grant of summary judgment in favor of Kerstein and Bennett in his notice of appeal.  The contention is without merit.  Federal Rule of Appellate Procedure 3(c)(4) expressly provides:  "The notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order. *It is not necessary to designate those orders in the notice of appeal*" (emphasis added).  The Advisory Committee Notes expressly address this scenario:

> [S]ome claims might be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6), and then . . . summary judgment under Fed. R. Civ. P. 56 is granted in favor of the defendant on the remaining claims. That second order, because it resolves all of the remaining claims, is a final judgment, and an appeal from that final judgment confers jurisdiction to review the earlier Fed. R. Civ. P. 12(b)(6) dismissal.

Advisory Committee Note to 2021 Amendments to Fed. R. App. P. 3(c).  The same reasoning applies when the earlier dismissal is under 28 U.S.C. § 1915(g).

-10-

This is a question of statutory interpretation. "We . . . review de novo a district court's interpretation and application of § 1915(g)." Rhinehart v. Weitzell, 964 F.3d 684, 687 (8th Cir. 2020) (citation omitted). "As with any question of statutory interpretation, we begin with the statute's plain language." United States v. Raiburn, 20 F.4th 416, 422 (8th Cir. 2021). Section 1915(g) provides that "[i]n no event shall a [three strikes] prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section . . . unless the prisoner is under imminent danger of serious physical injury." In this context, does "civil action" mean the three-strikes prisoner's entire case or appeal, or does it refer to each individual claim that is part of the entire case? The issue is perplexing because it has arisen in various contexts in interpreting the PLRA with answers that seem inconsistent, at least at first blush.

-- § 1915(g) defines a "strike" as "an action or appeal . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." In this context, "action" "unambiguously means an entire case or suit" and therefore if some claims were dismissed as frivolous or for failure to state a claim, but other claims were dismissed for other reasons, the dismissal was *not* a strike. See Orr v. Clements, 688 F.3d 463, 466 (8th Cir. 2012); Ellis v. Davis, 654 F. App'x 250, 252 (8th Cir. 2016) (unpublished per curiam), citing Tolbert v. Stevenson, 635 F.3d 646, 649-55 (4th Cir. 2011).

-- Another PLRA provision, § 1915A, which establishes initial screening procedures for review of a prisoner's complaint, states that the court "shall identify cognizable *claims* or dismiss the complaint, *or any portion of the complaint*, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." § 1915A(b) (emphasis added). This is evidence Congress knew how to distinguish between a lawsuit as a whole and individual clams within a lawsuit. And § 1915A(b) does not list a three-striker's failure to allege imminent danger as one of the reasons that a screening district court may dismiss certain claims from his lawsuit.

-11-

-- The PLRA provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Despite this wording, we held in McAlphin v. Toney that the imminent danger exception in § 1915(g) "must be limited to imminent danger claims that have been properly exhausted." 375 F.3d 753, 755 (8th Cir. 2004).  In Jones v. Bock, 549 U.S. 199, 220-24 (2007), resolving a conflict in the circuits, a unanimous Supreme Court agreed, rejecting a "total exhaustion" alternative and holding that, when an action includes exhausted and unexhausted claims, the district court applies "the more typical claim-by-claim approach," dismisses the unexhausted claims, and allows the exhausted claims to proceed. Responding to the argument that Congress used the word "action" instead of "claim," the Court observed that the phrase "'no action shall be brought' is boilerplate language [like] many instances in the Federal Code where similar language is used." Id. at 220.

Though we have not decided this issue, it has been extensively analyzed by other circuits.  All published circuit decisions directly addressing the propriety of the claim-by-claim approach to the imminent danger exception have rejected it.[5]  At least two other circuits, in unpublished decisions, have also rejected this approach. See Newkirk v. Kiser, 812 F. App'x 159, 160 (4th Cir. 2020); Boles v. Colo. Dep't of Corr., 794 F. App'x 767, 772 n.5 (10th Cir. 2019).  In addition, the D.C. Circuit has assumed, without expressly deciding, that if a three-striker satisfies the imminent danger exception with respect to one claim, then all *otherwise permissible* claims can proceed.  See Ibrahim v. District of Columbia, 463 F.3d 3 (D.C. Cir. 2006).

---

[5]See Chavis v. Chappius, 618 F.3d 162, 171-72 (2d Cir. 2010); Gibbs, 116 F.3d at 87 n.7; Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003); Andrews, 493 F.3d at 1053-54.

-12-

These decisions were based in part on principles of statutory construction -- "statutory references to an 'action' have not typically been read to mean that every claim included in the action must meet the pertinent requirement." Andrews, 493 F.3d at 1054, quoting Jones, 549 U.S. at 221.  Moreover, "[s]atisfaction of the 'imminent danger' element does no more than permit the complainant to proceed with his or her cause of action without prepayment of the filing fee in full. . . . [T]he merits of the cause of action itself are then available for consideration and decision." Gibbs, 116 F.3d at 87 n.7; see Andrews, 493 F.3d at 1054-55.

After the district court issued its final judgment in this case, we addressed this claim-by-claim issue for the first time in Charron v. Allen, 37 F.4th 483 (8th Cir. 2022).  In Charron, the district court dismissed some of the three-strike plaintiff's claims because the plaintiff failed to demonstrate that he met the imminent danger exception with respect to those claims, just as the district court dismissed most of Pinder's claims in this case.  Id. at 486-87.  In Charron, however, the plaintiff only appealed his claims against one defendant, and the district court had allowed all the plaintiff's claims against that defendant to proceed under the imminent danger exception.  Id. at 487.

On appeal, we noted that a "claim-by-claim approach to the 'imminent danger' exception was consistent with the plain language of § 1915A(b) and finds some support in our prior decisions" that require proper exhaustion of each imminent danger claim.  Id.  However, "this interpretation has been rejected by other circuits."  Id.  We concluded this is a "serious issue that no doubt needs greater attention if presented in a proper case."  Id.  We did not address the issue in Charron because the district court granted IFP status on all the claims asserted against the defendant on appeal ("[i]n other words . . . the district court granted . . . *full* § 1915(g) relief"), and because Charron did not appeal the without-prejudice dismissal of other defendants, a "partial dismissal of Charron's entire complaint [that] was arguably contrary to the above-cited cases from other circuits."  Id.

-13-

This appears to be a case that squarely presents this issue. The district court concluded that Pinder showed the requisite imminent danger at the time he filed his complaint from the risk that his shoulder will suffer further damage from being denied a double-cuff script. If the claim-by-claim approach is not a proper interpretation of the § 1915(g) exception, as our sister circuits have concluded, then the imminent danger exception was satisfied and the court should have proceeded with the case as to all claims.

"Some circuits have also required 'an adequate nexus between the claims [a three-strikes plaintiff] seeks to pursue and the imminent danger he alleges.'" Charron, 37 F.4th at 486 (quotation omitted).[6] In the leading case, the Second Circuit defined the issue as "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." Pettus, 554 F.3d at 298-99. Absent this requirement, the court noted, "an indigent prisoner with a history of filing frivolous complaints could, by merely alleging an imminent danger, file an unlimited number of lawsuits, paying no filing fee, for anything from breach of a consumer warranty to antitrust conspiracy." Id. at 297. However, no circuit rejecting the claim-by-claim approach has decided whether a nexus requirement would nonetheless apply to a three-strike indigent prisoner's complaint that includes multiple claims against multiple defendants, only some of which satisfy the imminent danger requirement. Cf. Chavis, 618 F.3d at 171. *That*

---

[6]See Pettus v. Morgenthau, 554 F.3d 293, 296-98 (2d Cir. 2009); Ball v. Hummel, 577 F. App'x 96, 96 n.1 (3d Cir. 2014); Meyers v. Comm'r of Soc. Sec. Admin., 801 F. App'x 90, 96 (4th Cir. 2020); Prescott v. UTMB Galveston Tex., 73 F.4th 315, 321 (5th Cir. 2023); Ray v. Lara, 31 F.4th 692, 700 (9th Cir. 2022); Boles, 794 F. App'x at 770; Pinson v. U.S. Dep't of Just., 964 F.3d 65, 71 (D.C. Cir. 2020); Fourstar v. United States, 950 F.3d 856, 859 (Fed. Cir. 2020).

-14-

appears to be yet another serious issue that is best addressed initially by the district court on remand.

It is important to emphasize that the claim-by-claim issue is narrow. A three-strikes indigent prisoner who satisfies the imminent danger exception in the district court or on appeal is still subject to dismissal for the reasons stated in § 1915A(b), he must fully comply with the PLRA exhaustion requirements in 42 U.S.C. § 1997e, and he is subject to being time-barred under the applicable statutes of limitations.

### C. The Double-Cuff Claim.

Pinder appeals the district court's grant of summary judgment on his claim of deliberate indifference against Dr. Kerstein and APN Bennett for declining to renew his double-cuff script. This issue was fully litigated on the merits and is reflected in the district court's final order. However, as we may lack jurisdiction to consider that ruling if Pinder's IFP status on appeal is revoked, we decline to consider the issue at this time. It remains with the case on remand.

### III. Conclusion

The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I concur in Parts I and II.B of the court's opinion,[7] but because I would deny Appellees' motion to revoke Pinder's IFP status, I dissent as to Parts II.A and II.C.

---

[7] In particular, I agree with the court that the weight of authority rejects the outlier claim-by-claim approach that the district court applied when dismissing most of Pinder's claims through interlocutory rulings. See Charron, 37 F.4th at 487.

-15-

We determine whether a three-strike plaintiff is under imminent danger of serious physical injury based on their allegations. McAlphin, 281 F.3d at 710; see Williams, 775 F.3d at 1189–90 (emphasizing that the imminent danger inquiry "be conducted through analysis of the prisoner's facial allegations and that these allegations be liberally construed"). And we have long recognized that "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury" satisfy the imminent danger exception. Martin, 319 F.3d at 1050; see Charron, 37 F.4th at 487 n.3. An administrative panel concluded that Pinder's allegations satisfied that standard, and I have no reason to question that decision.

The administrative panel's decision to let Pinder proceed IFP also constitutes the law of the case, which we generally "adhere[] to in the absence of clear error or manifest injustice." See Thompson v. United States, 872 F.3d 560, 564–65 (8th Cir. 2017) (citation omitted); cf. Maxfield v. Cintas Corp., No. 2, 487 F.3d 1132, 1135 (8th Cir. 2007) ("We will consider a previously decided issue under the law-of-the-case doctrine 'only if substantially different evidence is subsequently introduced or the decision is clearly erroneous and works manifest injustice.'" (citation omitted)). "For the law of the case doctrine to have any application, . . . the prior administrative panel must have actually decided the specific . . . issue." Id. at 565 (quoting Nyffeler Constr., Inc. v. Sec'y of Lab., 760 F.3d 837, 841–42 (8th Cir. 2014)). Here, the administrative panel could only rule on Pinder's motion to proceed IFP after deciding whether he sufficiently alleged he was in imminent danger of serious physical injury at the time of appeal. See 28 U.S.C. § 1915(g); Ashley, 147 F.3d at 717. Thus, the court's order granting IFP status necessarily reflects the panel's decision that Pinder met the imminent danger exception. Cf. Nordgren v. Hennepin Cnty., 96 F.4th 1072, 1077 (8th Cir. 2024) (reconsidering a motion to dismiss previously denied by an administrative panel when the panel's reasoning for its decision could not be discerned).

-16-

Appellees have not convinced me that the administrative panel's decision to grant Pinder's motion to proceed IFP on appeal was clearly erroneous. To support their request for revocation, Appellees submitted voluminous medical records to show that Pinder was not in imminent danger when he filed his appeal. But some records were from the months before Pinder filed his appeal, and others were from the months that followed. Since "the requisite imminent danger of serious physical injury must exist *at the time . . . the appeal is filed*," some of these records are likely irrelevant to the imminent danger inquiry. See Martin, 319 F.3d at 1050 (emphasis added); see also Pinson, 964 F.3d at 70 (agreeing that for an appeal filed in March, incidents that occurred as early as August of that same year should not be considered when assessing imminent danger). At a minimum, in asking us to reverse the previous grant of IFP status, Appellees have not identified clear error in the administrative panel's decision to grant Pinder's motion based on his allegations.

There is also no indication that the administrative panel's decision to grant Pinder IFP status constitutes manifest injustice. Appellees fail entirely to address their delay in responding to Pinder's motion. Pinder's motion to proceed IFP on appeal followed two unsuccessful motions, which the district court denied on the basis that an IFP appeal would not be taken in good faith. See R. App. P. 24(a)(2), 24(a)(5); Coppedge v. United States, 369 U.S. 438, 446 (1962) (noting that a district court's certificate that a plaintiff's appeal lacks good faith is "entitled to weight" but "is not conclusive"). Appellees could have well anticipated Pinder's motion in this court, yet they neither responded to nor resisted it. See Fed. R. App. P. 27(a)(3)(A) (requiring a response to "be filed within 10 days after service of the motion"). About one month after Pinder filed his motion, a panel of this court granted him IFP status, appointed him counsel, and directed the parties to brief the claim-by-claim issue. It was not until nearly two months later that Appellees filed their motion, asking this court to revoke Pinder's IFP status or dismiss his appeal. But when they did, nothing in their

-17-

submission suggested that upholding the administrative panel's order would amount to manifest injustice.

The district court is undoubtedly in the better position to conduct an evidentiary inquiry when a plaintiff's fear of imminent danger is challenged. But here, the plaintiff is an appellant, who has already been granted IFP status, and to ask the district court to conduct the inquiry at this stage raises challenging procedural and jurisdictional questions. Doing so also risks "'spawn[ing] additional litigation and creat[ing] mini-trials over whether a prisoner has shown an imminent danger,' adding to, rather than reducing, 'the flood of litigation brought by prisoners,'" thereby undermining Congress's intent in enacting the PLRA. Pinson, 964 F.3d at 70–71 (quoting Williams, 775 F.3d at 1190). And more immediately, it delays any recourse for Pinder, while unsettling the expectations of parties and litigants beyond this case.

For all these reasons, I respectfully dissent from the court's order to remand Appellees' motion to revoke.

_____

-18-