IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

STEVEN PINDER
ADC #123397                                                                                                    PLAINTIFF

v.                                           2:20-cv-00201-BSM-JJV

WELLPATH, LLC, *et al.*                                                                              DEFENDANTS

**RECOMMENDED DISPOSITION**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.      INTRODUCTION**

The issue presented in this case is - what happens when some of the claims in a complaint or appeal satisfy the imminent danger exception, while others do not? *See* 28 U.S.C. § 1915(g). Some courts hold that if any claim satisfies the exception, then the prisoner can proceed *in forma pauperis* (IFP) with all claims.[1] In contrast, it has been this District's practice to only allow a prisoner to proceed IFP with the specific claims that satisfy the imminent danger exception, which the Eighth Circuit has called the "claim-by-claim" approach. *Pinder v. WellPath, LLC*, 112 F.4th 495, 499 (8th Cir. 2024). Because there is no binding precedent in this Circuit, the Eighth Circuit

---

[1] I will call this the "all-or-nothing" approach.

has remanded that issue, as well as others, to this Court for resolution.[2]  *Id.* at 497, 504.

## II. PRISON LITIGATION REFORM ACT

About the Prison Litigation Reform Act (PLRA), the United States Supreme Court recently stated:

> Our legal system is committed to guaranteeing that prisoner claims of illegal conduct by their custodians are fairly handled according to law. The challenge, however, lies in ensuring that the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit. To address that challenge, Congress enacted the Prison Litigation Reform Act of 1995, 94 Stat. 352, 42 U.S.C. § 1997e, which aims to reduce the quantity and improve the quality of prisoner suits.

*Perttu v. Richards*, 145 S. Ct. 1793, 1798 (2025) (internal citations omitted).  To help accomplish this goal, the PLRA requires courts to screen prisoners' complaints soon after they are filed to dismiss, sua sponte, any claims that are frivolous, malicious, or implausible.  28 U.S.C. § 1915A. Additionally, a court must dismiss any claims in the complaint that have not been properly exhausted in the prison grievance procedure.  42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 220-24 (2007) (only unexhausted claims, and not the entire case, may be dismissed). And, of particular importance to this case is the "three strikes provision," which says:

> In no event shall a prisoner bring a <u>civil action</u> or <u>appeal</u> a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is

---

[2] In *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003), the Eighth Circuit concluded a prisoner could not proceed IFP because both of his claims failed to satisfy the imminent danger exception. Although the Eighth Circuit looked at the claims separately, it did not address what would have happened if only one claim had satisfied the imminent danger exception. In *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004), the Eighth Circuit held a trial court did not err in denying a three-striker permission to amend his complaint to add non-imminent danger <u>and</u> unexhausted claims because both requirements had to be satisfied. Although the Eighth Circuit focused on individual claims, instead of the entire action, it did not say what would happen if the prisoner had asked to add properly exhausted but non-imminent danger claims. Thus, neither case is squarely on point.

      under <u>imminent danger of serious physical injury.</u>

28 U.S.C. § 1915(g) (emphasis added).

      At first blush, § 1915(g) may seem to be a harsh provision in the law. But it is constitutional. *Higgins v. Carpenter*, 258 F.3d 797 (8th Cir. 2001). And strikes are assessed on a limited basis. They are not imposed for claims dismissed during summary judgment or trial; they are only a consequence of filing frivolous, malicious, or implausible claims that are dismissed during screening after the district court has, in most instances, pointed out the deficiencies in the complaint and given the prisoner the opportunity to amend to prevent dismissal. *Gard v. Kaemingk*, Case No. 15-3487, 2016 WL 6595966 (8th Cir. Nov. 8, 2016). Moreover, to be a strike, the entire case, and not just a portion thereof, must be dismissed for the reasons listed in § 1915(g). *Pinder,* 112 F.4th at 503. Importantly, § 1915(g) does not bar prisoners who have previously strained judicial resources from filing a lawsuit; it only dictates when the filing fee must be paid. *Id.* at 500.

      Three-strikers who fall under the imminent danger exception may proceed IFP and pay the filing fee over time, while those who cannot meet that threshold may still pursue their claims by paying the filing fee in full. *Id.* And three strikers who must pay the filing fee in full may recover their costs, and attorney's fees, if they are a prevailing party. *See* 28 U.S.C. § 1920; 42 U.S.C. § 1988.

**III.    PROCEDURAL HISTORY**

      Steven Pinder (Plaintiff) is a prisoner who has accumulated three strikes under 28 U.S.C. § 1915(g). In *Pinder v. Reynolds, et al.,* 1:02-cv-01050 (W.D. Ark.), while a pretrial detainee, his claim that his meals were being served at a temperature below 140 degrees was deemed frivolous and failed to state a claim. In *Pinder v. Waller, et al.*, 1:02-cv-01068 (W.D. Ark.), again while a

3

pretrial detainee, Plaintiff's claim that he spent two days locked down in a cell without a working sink was deemed frivolous and failed to state a claim. In *Pinder v. Knighton, et al.*, 1:02-cv-01069 (W.D. Ark.), Plaintiff, while still a pretrial detainee, had his access to law library and attorney claims dismissed as frivolous and for failure to state a claim.

In October 2020, he sought permission to proceed IFP in a *pro se* Complaint alleging eleven Defendants failed to provide him with adequate medical care for a variety of medical problems. (Doc. 2.) Using the claim-by-claim approach, this Court determined Plaintiff's inadequate medical care claim regarding a shoulder injury satisfied the imminent danger exception, while all the others did not. (Docs. 8, 54, 105, 111.) Accordingly, the Court allowed Plaintiff to proceed IFP on that claim only and dismissed the others so that Plaintiff could, if he chose to do so, pursue them in a separate lawsuit after paying the filing fee in full. *Id.* Later, the Court granted summary judgment finding no genuine issue of material fact as to Plaintiff's shoulder injury claim and dismissed the case. (Docs. 162, 168, 169.)

In September 2022, Plaintiff appealed. The Eighth Circuit granted Plaintiff IFP status assuming the truth of his allegations that, at the time of appeal, he was in imminent danger as to several medical conditions. *Pinder*, 112 F.4th at 498-99. Defendants subsequently moved to revoke Plaintiff's IFP status based on evidence suggesting he was not in imminent danger. *Id.* While the case was being briefed, the Eighth Circuit *sua sponte* raised the issue of whether this Court erred in applying the claim-by-claim approach to the imminent danger question considering *Charron v. Allen*, 37 F.4th 483 (8th Cir. 2022), which was a case questioning, but not resolving, that issue.[3] *Id.* at 504. After being briefed and hearing argument on this issue, the Eighth Circuit

---

[3] In *Charron*, a trial court applying the claim-by-claim approach allowed a prisoner to proceed IFP with two imminent danger claims against one defendant, while dismissing the non-imminent danger claims against the other defendants. *Id.* at 485-87. On appeal, the Eighth Circuit said the

4

remanded the Motion to Revoke IFP on Appeal because it raised factual disputes, and appellate courts are "ill-equipped to adjudicate" them.[4]  *Id.*

Finally, in response to a point raised by the dissent, the Eighth Circuit said that on remand Plaintiff could argue, for the first time, that the Motion to Revoke was untimely filed.[5]  *Id.* at 501, n. 3.  And, Plaintiff has done so.

I will now address each of those issues separately based on the briefs the parties filed with the Eighth Circuit (8th Cir., Case No. 22-3050, Docs. 5207476, 5207481, 5235800, 5246315, 5248223, 526559, 5292068, 5292422, 5292428, 5299275), the parties' post-remand pleadings in this Court (Docs. 197, 198, 217, 218, 222), and the arguments and evidence presented during the October 23, 2024, Evidentiary Hearing (Docs. 250, 251).

## IV.   CLAIM-BY-CLAIM APPROACH

"As with any question of statutory interpretation, we begin with the statute's plain language."  *Pinder*, at 112 F.4th at 502.  As previously mentioned, § 1915(g) says a three striker cannot "bring a <u>civil action or appeal</u> . . . unless the prisoner is under imminent danger of serious physical injury."  (Emphasis added.)  As noted by the Eighth Circuit, several circuit courts have rejected the claim-by-claim approach, some with little discussion, because the statute says no "civil action or appeal," instead of "claims."  *See Chavis v. Chappius*, 618 F.3d 162, 171-72 (2d Cir.

---

claim-by-claim approach was "consistent with the plain language" of § 1915A(b) (which is the screening provision) and "finds some support in our prior decisions."  *Id.* at 487.  Nevertheless, the Eighth Circuit declined to resolve the issue because the prisoner had not appealed the dismissal of the non-imminent danger claims against the other defendants.  *Id*. 487-488.

[4] When initially reviewing an IFP application, the trial or appellate court must accept the truth of allegations when determining if the imminent danger exception has been satisfied. But if a motion to revoke is filed, it becomes an evidentiary issue. *Pinder,* 112 F.4th at 500-1. And the existence of imminent danger must be decided separately at the time the complaint and appeal are filed.

[5] In contrast, the Eighth Circuit declined to address the issue of whether summary judgment on the shoulder injury claim was proper until the other issues were resolved on remand.  *Id*. at 505.

2010); *Newkirk v. Kiser*, Case No. 19-7649, 2020 WL 4018987 (4th Cir. Jul. 16, 2020); *Ciarpaglini v. Saini*, 352 F.3d 328 (7th Cir. 2003); *Andrews v. Cervantes*, 493 F.3d 1047, 1053-54 (9th Cir. 2007); *Boles v. Colo. Dep't of Corr.*, Case No. 19-1314, 2019 WL 6693590, n. 5 (10th Cir. Dec. 9, 2019); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6-7 (D.C. Cir. 2006).[6] Defendants have not cited, nor could I find, any circuit court cases holding otherwise.[7] Nevertheless, I disagree with this interpretation of § 1915(g) for the following reasons.

First, § 1915(g) says a three striker cannot proceed IFP with "a civil action or appeal" in the absence of imminent danger. Contextually, the claim-by-claim approach fairly applies by allowing only a claim raising imminent danger to proceed. Similarly, the United States Supreme Court in *Jones v. Bock*, 549 U.S. 199, 219-24 (2007), rejected strict construction of the word "action" when interpreting the PLRA's exhaustion requirement.[8] Seizing on the word "action," many circuit courts, including the Eighth Circuit, had held that if a case included any unexhausted claims then the entire "action" or lawsuit had to be dismissed. However, the Supreme Court

---

[6] In *Pinder*, the Eighth Circuit cited *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997) as rejecting the claim-by-claim approach. But in *Gibbs*, the Third Circuit held the imminent danger must be evaluated at the time the alleged event occurred and not when the complaint was filed, which was later overruled in *Abdul-Akbar v. McKelvie*, 239 F.3d 307 (3d Cir. 2001). In footnote 7, the *Gibbs* Court said, in dicta, that in a hypothetical scenario it would allow a prisoner to proceed with both imminent danger and non-imminent danger claims. But it did not provide any reasoning for that conclusion. Since then, several district courts in the Third Circuit has refused to follow the *Gibbs* dicta, and instead, applied the claim-by-claim approach. *See, e.g., Davis v. Wetzel,* No. 1:18-CV-00804, 2018 WL 2978025 (M.D. Pa. June 13, 2018); *Brown v. Lyons*, 977 F. Supp. 2d 475, 482-83, n. 8 (E.D. Pa. 2013). Thus, I conclude the issue has not been resolved in the Third Circuit.

[7] However, several districts have applied the claim-by-claim approach. *See, e.g., Benson v. Oldham*, Case No. 2:17-cv-02749-TLP/TMP, 2018 WL 11476055 (W.D. Tenn. July 17, 2018); *Benson v. Oldham*, No. 217CV02749TLPTMP, 2018 WL 11476055 (W.D. Tenn. July 17, 2018); *Brumfield v. Goodwin*, No. 16-CV-1197, 2018 WL 1190628 (W.D. La. Feb. 20, 2018); *see also Matthews v. United States*, 72 Fed. Cl. 274, 281 (U.S. Court of Fed. Claims 2006).

[8] The PLRA says "[n]o action shall be brought with respect to prison conditions" until available administrative remedies are exhausted. 42 U.S.C. § 1997e(a) (emphasis added.)

identified the phrase "[n]o action shall be brought" as mere "boilerplate language" that had "not typically been read" as every claim. *Id*. at 220-21. The Supreme Court emphasized that as "a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Id*. at 221. The Supreme Court also noted the physical injury requirement in 42 U.S.C. § 1997e(e) says "[n]o Federal civil <u>action</u> may be brought by a prisoner" for mental or emotional harm in the absence of a physical injury.[9] *Id*. (emphasis added). Nevertheless, § 1997e(e) only prevents a prisoner from obtaining damages on the specific <u>claims</u> causing no physical injury; it does not require the entire "action" or lawsuit to be dismissed. *Id.* at 223 (emphasis added). Thus, the *Jones* decision suggests strict construction of the word "action," as used in § 1915(g), is misguided.

Second, the Eighth Circuit has already recognized that the claim-by-claim approach is "consistent with the plain language of § 1915A(b) and finds some support in our prior decisions." *Charron*, 37 F.4th at 487 (citing *McAlphin,* 375 F.3d at 755; *Martin*, 319 F.3d at 1050-51.) I believe this to be the correct interpretation, especially given the holding in *Jones v. Bock.*

Third, the claim-by-claim approach is consistent with the purpose of § 1915(g), which was to discourage prisoners with a history of filing abusive or implausible claims from further straining judicial resources by requiring them to pay the filing fee in full. *See Charron,* 37 F.4th at 486 ("Congress enacted the PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims"); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir. 2001) ("In enacting the PLRA, Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained I.F.P.

---

[9] In 2013, which was after *Jones* was decided, Congress amended § 1997e(e) to allow the recovery of damages for a physical injury, as well as "the commission of a sexual act (as defined in section 2246 of Title 18)." *See* PL 113-4, March 7, 2013, 127 Stat 54.

7

status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants"). But instead of completely closing the door to three-strikers seeking IFP status, Congress left a small crack or "safety valve" only for "dire" situations when three strikers are in "[1] imminent danger of [2] serious [3] physical injury." *See Meyers v. Comm'r of Soc. Sec. Admin.*, Case No. 18-2312, 2020 WL 429706, *95 (4th Cir. Jan. 28, 2020).

    For instance, it is undisputed three strikers who have suffered egregious injuries or harms in the past, without any present threat of harm, cannot proceed IFP. *Pinder,* 112 F.4th at 498. Similarly, three strikers cannot proceed IFP under § 1915(g) with access to the courts, religion, due process, or other claims that by their nature do not involve a physical injury. These undisputed restrictions clearly demonstrate Congress intended the imminent danger "safety valve" to be narrowly construed. *Brown*, 977 F. Supp. 2d at 482-83. Adoption of the all-or-nothing approach would turn this narrowly intended safety valve into a floodgate by allowing three strikers who assert one imminent danger claim to also proceed with innumerable non-imminent danger claims merely because they are included in one complaint. *See Ibrahim,* 463 F.3d at 5. "No reasonable reader would understand the self-evidently narrow imminent danger exception to sweep so broadly." *See Pettus v. Morgenthau,* 554 F.3d 293, 297 (2d Cir. 2009). And that result is illogical. Why would Congress "enact a statutory rule that would reduce the huge volume of prisoner litigation, but, with the other hand" engraft "an open-ended exception that would eviscerate the rule." *Abdul-Akbar,* 239 F.3d at 315. And that is exactly what happens when a three striker is allowed to proceed IFP with a litany of non-imminent danger claims merely because one of the claims buried in the complaint satisfies the imminent danger exception.

    Lastly, such an unnecessarily broad interpretation of § 1915(g) would eliminate the incentive for prisoners to avoid the imposition of a strike, in the first place, by only filing plausible

lawsuits. For these reasons, I conclude the claim-by-claim approach is appropriate for applying the imminent danger exception in § 1915(g), and that three strikers should only be allowed to proceed IFP with the specific claims that satisfy the imminent danger exception.[10]

## V. Timeliness Of the Motion to Revoke IFP Status on Appeal

The first issue that must be resolved is whether the Motion was timely filed. Plaintiff filed his IFP Application and statement of imminent danger with the Eighth Circuit on October 11, 2022. The Eighth Circuit granted it on November 23, 2022, and Defendants filed their Motion to Revoke IFP status approximately seven weeks later, on January 13, 2023. (8th Cir., Case No. 22-3050 at Docs. 5207476, 5207481, 5220644, 5235800). Plaintiff says Defendants were required to file a response objecting to his IFP Application within ten days after it was filed. *See* Fed. R. App. P. 27(a)(3)(A) ("Any party may file a response to a motion . . . within 10 days after service of the motion").

That argument has no merit because, as explained in *Pinder,* the "initial grant of IFP status is made based on the three-strike plaintiff's *ex parte* showing of imminent danger," and the court has discretion to later reconsider that decision based on the evidence. *Pinder,* 112 F.4th at 501. So, instead of imposing a hard and fast deadline for when a motion to revoke must be filed, the

---

[10] In *Pinder*, the Eighth Circuit noted that "no circuit rejecting the claim-by-claim approach" has decided whether there must be "an adequate nexus between the claims a three-strikes plaintiff seeks to pursue and the imminent danger he alleges." 112 F.4th at 504-05 (emphasis added). And it suggested this Court consider that issue on remand. *Id*. at 505. However, the nexus cases deal with an issue not presented in this case, which is: Can a three striker proceed IFP when he raises factual allegations of imminent danger that are not claims for which he seeks relief in his complaint? *See, e.g., Pettus v. Morgenthau,* 554 F.3d 293, 295-299 (2d Cir. 2009); *Ray v. Lara*, 31 F.4th 692, 699 (9th Cir. 2022); *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565 (6th Cir. Oct. 11, 2018). I find no need to address the nexus issue because: (1) I am not recommending the claim-by-claim approach be rejected; (2) the nexus issue is irrelevant if a court only allows a prisoner to proceed with imminent danger claims; and (3) Plaintiff's allegations of imminent danger are the same as his underlying inadequate medical care claims.

9

Eighth Circuit said this Court should consider whether the delay "was inexcusable and prejudicial." *Pinder,* 112 F.4th at 501, n.3.

Defendants have not explained why they waited seven weeks to file their Motion to Revoke. But I find it significant the Eighth Circuit initially granted Plaintiff's IFP Application before any of the Defendants had entered an appearance on appeal. (8th Cir., Case No. 22-3050, at Docs. 5220644, 5221349, 5225188, 5224293).

Plaintiff has not explained how he was prejudiced by the Motion to Revoke being filed in January 2023. Nor can I find any such prejudice. Defendants filed their Motion to Revoke IFP on January 13, 2023, which was approximately one month before Plaintiff's appellate brief was due. (*Id*. at Doc. 5228647.) Thereafter, the Eighth Circuit held the briefing schedule on the merits in abeyance until the Motion to Revoke could be resolved. (*Id*. at Doc. 5236414.) Then, in February 2023, the Court decided the Motion to Revoke should be considered with the merits of the appeal and gave Plaintiff's appointed counsel an extension until April 14, 2023, to file a brief on all issues. (*Id*. at Docs. 5250087, 5259625.) Thus, Plaintiff's attorney had approximately <u>four months</u> to respond to the Motion to Revoke. And, importantly, his attorney did not argue Plaintiff suffered any prejudice by when the Motion to Revoke was filed. Instead, that was an issue raised *sua sponte* by the dissenting opinion in *Pinder*. Because there is no evidence of inexcusable neglect on Defendants' part or that Plaintiff suffered any prejudice, I conclude the Motion to Revoke was timely filed.

## VI.     MERITS OF THE MOTION TO REVOKE IFP STATUS ON APPEAL

To establish imminent danger at the time of Plaintiff's September 2022 appeal there must be evidence of an "ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Id.* at 500. For the following reasons, I find there

is no such evidence as to any of Plaintiff's medical conditions, which I will discuss separately.

  **A.  Glaucoma**

It is undisputed Plaintiff has severe glaucoma in both of his eyes, he has previously had a shunt installed to reduce his eye pressure, and he has a reduced field of vision. It is also undisputed optometrists regularly monitor Plaintiff's glaucoma in prison, and he is allowed to keep several prescribed eye drops on his person. (Doc. 218-1, Doc. 218-2; Doc. 251-2 at 23, 128-131, 156-57.) Plaintiff says that, in September 2022, he was in imminent danger because there were often delays in getting his eye drop prescriptions renewed, and he was treated by optometrists instead of ophthalmologists. As a result, Plaintiff says he has become "blind in his right eye" and sustained an "increased vision loss of 75% in his left eye." (Doc. 222 at 9.) But, as explained by the Eighth Circuit, when a motion to revoke is filed imminent danger must be based on evidence and not mere assertions. *Pinder*, 112 F.4th at 501. And Plaintiff has not presented any medical evidence to support his assertions of imminent danger to his eyes.

In contrast, the medical records say Plaintiff received: (1) latanoprost drops on August 2, September 7, and October 5, 2022; (2) dorzolamide drops on August 18, September 21, and October 26, 2022; and (3) Refresh drops August 18, September 10, September 21, and October 26, 2022. (Doc. 218-1.) Thus, at most, Plaintiff experienced, a four-to-five-day delay in receiving those three glaucoma medications. And, Dr. Stiles, who is a board-certified optometrist, says in his sworn declaration that there is "no adverse effect if a patient misses an occasional dose" of those eye medications. (Doc. 218-2 at 1-2.)

The medication records show Plaintiff only received brimonidine tartrate drops on August 18 and October 24, 2022, which is a longer delay. (Doc. 218-1 at 6-7.) It appears the prison received a bottle of that medication from the offsite pharmacy on September 16, 2022, but there is

no explanation why Plaintiff did not receive it. (*Id.*)  Nevertheless, Dr. Stiles concludes, in his professional medical opinion, that Plaintiff's glaucoma was "stable," "not deteriorating," and not placing him in "any imminent danger" when he filed his appeal in September 2022. (Doc. 218-2*.*) And Dr. Maris, who is a family practitioner, agrees with that conclusion based on his review of the medical records. (Doc. 251-3 at 1- 2).  Thus, although I am sympathetic to the frustration and sincere concerns Plaintiff has about his reduced vision, nothing in the medical records before me suggests he was in imminent danger in September 2022 due to a lack of proper medical care for glaucoma.

  **B.** **Ulcer & Acid Reflux**

Plaintiff says in September 2022, he was in imminent danger because he: (1) was not receiving any medical care for a bleeding ulcer and acid reflux, which caused him to have bloody stools, vomiting, throat pain, and difficulty sleeping; and (2) had previously taken ranitidine for reflux, which was discontinued in 2019 because it might cause cancer.  But Plaintiff has not provided any medical evidence to support those assertions.

In contrast, Dr. Horan, who is the ADC Regional Medical Director, says in his sworn declaration that from June 25 to September 30, 2022, Plaintiff did not file any medical requests or voice any complaints during segregation rounds about ulcer or reflux symptoms. (Doc. 251-2 at 1-3.) And during my review of the medical records, the only mention I found of stomach issues was in early August 2022, when Plaintiff reported vomiting, diarrhea, and fever due to food poisoning.[11] (Doc. 251-2 at 52, 148.) For these reasons, I conclude there is no medical evidence that in September 2022 Plaintiff was in imminent danger of serious physical injury due to a lack

---

[11] On July 8, 2022, a nurse determined that raised spots on Plaintiff's hand were not cancerous, and there is no evidence ranitidine use causes skin cancer. (Doc. 251-2 at 10-11.)

of proper treatment for an ulcer, acid reflux, or related issues.

### C.     Diabetes & Neuralgia

It is undisputed Plaintiff is routinely monitored by prison medical providers for type two diabetes. According to the medical records, on September 14, 2022, Defendant APRN Bennett noted Plaintiff's glucose levels were normal, but his creatine level, which was monitored due to his chronic kidney disease, was slightly elevated. (Doc. 251-2 at 19-21; Doc. 251-3 at 1-2.) To address that situation, Defendant Bennet discontinued ibuprofen and one of Plaintiff's diabetes medications and started him on a kidney medication, which improved his creatine levels by November 2022. (*Id.*) Importantly, Dr. Maris says, in his professional medical opinion, that Plaintiff's diabetes and chronic kidney disease were well controlled in September 2022. (Doc. 251-3.) And Plaintiff has not offered any contrary medical evidence.

Plaintiff also says he has diabetic neuralgia in his legs and feet that is painful and puts him at risk of amputation. But he has not offered any medical evidence to support those assertions. And there is no mention in the medical records of Plaintiff seeking treatment for those medical concerns during the time of his September 2022 appeal. (Docs. 251-1, 251-2.) Accordingly, I conclude there is no medical evidence Plaintiff was in imminent danger in September 2022 due to a lack of proper treatment for diabetes or neuralgia.

### D.     Shoulder Injury

In his Complaint, Plaintiff's says, in 2020, Defendants violated his constitutional rights by discontinuing a double cuff script that allowed him to be handcuffed with two, rather than one, set of handcuffs to accommodate a prior right shoulder injury. That allegation is discussed at length in this Court's decision granting summary judgment on the merits of that claim. (Doc. 162, 168.) And the Eighth Circuit has declined to address that ruling at this time. *Pinder*, 112 F.4th at 505.

Instead, the issue currently before the Court is whether, in September 2022, Plaintiff was in imminent danger of serious physical injury due to his shoulder. Plaintiff says his shoulder dislocated because he did not have a double cuff script. But again, he has not supplied any medical evidence to support that assertion. Nor was there any indication in the medical records before me that Plaintiff sought medical treatment for shoulder issues during the three-month period before his September 2022 appeal. (Docs. 251-1, 251-2.) Thus, I conclude there is no medical evidence Plaintiff was in imminent danger in September 2022 regarding his shoulder.

Before leaving this issue, I note Plaintiff says, as he did during the October 23, 2024, Evidentiary Hearing, that the medical records are "inaccurate, altered, and fabricated." (Doc. 222 at 34.) But the minor inconsistencies he points to do not support that implausible assertion. Plaintiff also says he was not able to conduct discovery to obtain medical evidence in his favor. (Doc. 222.) Although I denied Plaintiff's requests for counsel after this case was remanded, Plaintiff did not file any motions seeking to reopen discovery or saying Defendants were refusing to provide him access to or copies of his relevant medical records. Finally, I note Plaintiff received a copy of the medical records Defendants submitted into evidence during the October 23, 2024, Evidentiary Hearing.

E.     **Conclusion**

It is undisputed Plaintiff has a variety of serious chronic illnesses, and I am sympathetic to the discomfort and physical limitations he is experiencing as a result thereof. But because Plaintiff has previously accumulated three strikes, § 1915(g) prohibits him from proceeding IFP unless he was in "imminent danger of serious physical injury," which is a high threshold he has not met as to any of his September 2022 medical issues. In other words, because there is no evidence of an "ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent

serious physical injury," I conclude Plaintiff is not entitled to proceed *in forma pauperis*. Consequently, I recommend the Motion to Revoke IFP on Appeal be granted, and Plaintiff be given fourteen days to pay the appellate filing fee in full. *Pinder*, 112 F.4th at 499, n. 2 (noting that a three striker should be given the opportunity to pay the filing fee prior to dismissal).

## VII. RECOMMENDATION

IT IS, THEREFORE, RECOMMENDED that:

1. The Eighth Circuit adopt the claim-by-claim approach when analyzing the imminent danger exception in § 1915(g).

2. This Court GRANT Defendants' Motion to Revoke Plaintiff's IFP Status on Appeal and give Plaintiff fourteen days to pay the $605 appellate filing fee in full to the Clerk of this Court.

Dated this 7th day of August 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE